### In the Matter of City of Chester

*Douglas R. Blazey,* for Department of Environmental Resources.

*Peter J. Nolan,* for City of Chester and Chester Sewer Authority, intervenor.

BROUGHTON, Chairman, January 31, 1973.—This is an appeal by the City of Chester from an order dated May 5, 1972, issued by Daniel B. Drawbaugh, Chief, Division of Water Supply and Sewerage, Pennsylvania Department of Environmental Resources. The order requires that the City of Chester negotiate with and enter into agreement with the Delaware County Regional Water Quality Control Authority (DELCORA) on a basis consistent with the Delaware

County Regional Sewerage Plan. Respondent challenges the propriety of establishing DELCORA as the county-wide agency for implementation of the Regional Sewerage Plan.

Chester Sewer Authority was given leave to intervene in the matter.

Hearings were held on September 12 and September 22, 1972, before M. Melvin Shralow, Esquire, Hearing Examiner.

## FINDINGS OF FACT

1. The City of Chester is the owner and the Chester Sewer Authority is the operator of a sewage treatment plant located in the City of Chester, Delaware County, Pa. This plant is operated pursuant to Sanitary Water Board Permit No. 5679.

2. The Chester plant services residents of the City of Chester. It also provides sewage treatment for nine municipalities in the vicinity of the City of Chester, pursuant to written service agreements between each such municipality and the City of Chester.

3. In 1968 the Pennsylvania Department of Environmental Resources (the Department), in conjunction with the Delaware River Basin Commission (DRBC),[1] began to encourage the development of plans for regional programs dealing with sewage and waste water treatment facilities. This was consistent with widely accepted and recognized economies, both in efficiency of operation and quality of water management, to be realized by broadly based regional systems as compared to a proliferation of small municipal treatment facilities.

[1] The Delaware River Basin Commission was created by the adoption of the Delaware River Basin Compact by the United States and the four participating states, Delaware, New Jersey, New York and Pennsylvania: Act of July 7, 1961, P. L. 518, 32 PS §815.101.

4. A series of meetings was held during 1968 and 1969 at which thoughts on regionalization were developed and pursued. As a result of these meetings, the Commissioners of Delaware County and the Delaware County Planning Commission decided to have a study prepared for a county-wide sewage treatment system.

5. In 1970, Albright & Friel, a division of Betz Environmental Engineers, Inc., was engaged to perform this study. A technical advisory committee (TAC) was formed, consisting of representatives of industry, regional commissions, State goverment and municipal governments, to advise the engineers. Charles J. Catania, City Engineer of the City of Chester and owner of Catania Engineering Associates, Inc., consulting engineers to the Chester Sewer Authority, was a voting member of TAC.

6. The work of Albright & Friel and TAC resulted in a report entitled "Delaware County Regional Sewerage Project" dated October 28, 1971. The report evaluates 25 alternative plans and recommends a plan which provides for division of the county into two sections, eastern Delaware County and western Delaware County. According to the plan, sewage from eastern Delaware County would be conveyed to and treated at Philadelphia's Southwest Treatment Plant. In the western part of the county, sewage would be conveyed to and treated at an expanded and upgraded plant at the site of the existing City of Chester plant.

7. The plan calls for facilities development in stages. In each stage additional interceptors and pumping stations would be built to reach more outlying communities and capacity at the plant would be increased, reaching a peak of 115 million gallons per day in the year 2020.

8. The plan calls for the establishment of a single,

county-wide authority to implement the plan and administer the entire system.

9. The Commissioners of Delaware County accepted the proposed plan and on October 20, 1971, they adopted a resolution pursuant to the Municipality Authorities Act of May 2, 1945, P. L. 382, 53 PS §301, et seq., establishing DELCORA as a county authority for the purpose of implementing the regional plan. Articles of Incorporation were filed with the Department of State on November 17, 1971.

10. Even before development of the regional plan, it was apparent that capacity of the Chester plant would have to be increased to meet growing needs in the area. Therefore, concurrently with the regional studies, plans were developed to increase the plant capacity to 40 mgd or 60 mgd, depending on whether certain industries were to be included as dischargers into the plant.

11. A United States Department of Housing and Urban Development (HUD) grant was obtained for this study, based upon an application filed by the Chester Sewer Authority. In addition, the authority obtained a bank loan of $1,300,000 for preparation of plans. It has been agreed that DELCORA will assume all expenses and obligations for the study and for expansion of the plant in the event that its designation as the regional authority is upheld.

12. In developing the regional plan and recommending a single regional authority, consideration was given to the various advantages and disadvantages of regional versus local implementing authorities.

13. The opinions of experts in the fields of construction, management and finance of sewage treatment systems all support the use of a single regional authority based upon the following factors:

A. More efficient planning and implementation of a system is available when the implementing agency has control over the entire system.

B. Economies of manpower use and administration are available when a single agency is utilized, as opposed to the duplication necessary when more than one implementing agency is involved.

C. More advantageous financing terms are available to a county-wide agency whose obligations are backed by the county than would be available to agencies whose obligations were backed by smaller, local governmental units.

D. A county-wide unit is better able to negotiate contracts with municipalities than is an authority created by another municipality.

E. Political control of the implementing authority is more properly lodged in the county commissioners, representing all of the county, than in a single municipality.

14. A meeting was held on February 4, 1972, sponsored jointly by the Department and DRBC for consideration of the recommended plan. Thereafter, on February 23, 1972, DRBC adopted the Delaware County Regional Sewage Project Report as an amendment to DRBC's Comprehensive Plan.

15. At the February 4th meeting the City of Chester expressed its desire to be named as the implementing authority for the part of the plan covering western Delaware County. Neither at that meeting nor at any other time has the City of Chester or the Chester Sewer Authority expressed any disagreement with the regional plan itself.

16. The only objections of respondent and intervenor are to the designation of DELCORA as a county-wide authority to implement the plan, rather than

limiting DELCORA or any other body to implementation of the plan for eastern Delaware County and the designation of respondent as the implementing body for western Delaware County.

17. Respondent and intervenor have produced no evidence to show that any of the factors considered by the Department, DRBC, the Commissioners of Delaware County, Albright & Friel or TAC were improper, nor has any evidence been produced to show an abuse of discretion by any governmental agency involved.

18. Although given an opportunity to do so, neither respondent nor intervenor has filed a brief with the board in support of its position.

## DISCUSSION

The position of respondent and intervenor in this appeal is an anomalous one. They have stated their agreement with the regional plan, but dissent from one of the key features of the plan, namely, the designation of a county-wide authority to implement construction and administer the system. Thus on the one hand they appear to support regionalization, while on the other hand they would cut out one of the essential features which makes this a truly regional plan. Furthermore, they have presented no evidence whatever which would show either that DELCORA is unqualified to assume this role, or that the Chester Sewer Authority is more qualified. There has been no rebuttal of. testimony offered by the department to show the numerous advantages accruing to a county-wide authority which were considered in the recommendation and adoption of the regional plan.

The Clean Streams Law of June 22, 1937, P. L. 1987, as amended, 35 PS §691.1, et seq., provides

that the department[2] shall consider, where applica-
ble, (1) water quality management and pollution con-
trol in the water shed as a whole; . . . (3) the feasibility
of combined or joint treatment facilities; . . . (5) the
immediate and long-range economic impact upon the
Commonwealth and its citizens. The department* is
given the power and duty to establish policies for .
effective water quality control and water quality man-
agement in the Commonwealth and to coordinate and
be responsible for the development and implementa-
tion of comprehensive public water supply, waste
management and other water quality plans: Clean
Streams Law, §5.

The authority is thus granted to the department to
encourage appropriate regional planning and, where
such plans have been adopted, to require that the
actions of individual municipalities and municipal
authorities are consistent with such regional plans.
This is what the department has done in this case,
and there is no evidence in the record which would
show that the department abused its discretion or
exceeded its authority in any way.

## CONCLUSIONS OF LAW

1. The Department of Environmental Resources
has the authority under the Clean Streams Law to
encourage comprehensive regional planning for sew-
age and waste water facilities, and to order munici-
palities and municipal authorities to act in a manner
consistent with regional planning in dealing with
such systems.

----

[2] The powers and duties originally lodged in the Sanitary Water
Board and the Department of Health were transferred to the
Department of Environmental Resources by the Act of December
3, 1970, No. 275, P. L. 834, sec. 20 (22), 71 PS §510-1 (22).

2. The order of the department of May 5, 1972, was issued pursuant to the authority granted to the department by the Clean Streams Law.

3. The Department did not exceed its authority or abuse its discretion in issuing the order of May 5, 1972.

## ORDER

The appeal of the City of Chester and the Chester Sewer Authority from the order of the Department of Environmental Resources dated May 5, 1972, is hereby dismissed.